**Bobby NEAGLE, Petitioner,**

v.

**George C. NELSON, M.D. et al., Respondents.**

**No. C–2576.**

Supreme Court of Texas.

Jan. 30, 1985.

Rehearing Denied March 6, 1985.

Phillip Brown, Amarillo, for petitioner.

Paul M. Green, San Antonio, James H. Robichaux and Ben A. Donnell, Corpus Christi, for respondents.

WALLACE, Justice.

This appeal presents an attack on the constitutionality of the limitations provision in the 1977 Medical Liability Act. Bobby Neagle filed this malpractice action against Dr. George C. Nelson, Dr. Roy J. Hotz and two nurses, Nancy S. Kieschnick and Linda N. White. He alleged that a surgical sponge had been left in his abdomen during an appendectomy in which the respondents had participated. Each respondent moved for summary judgment on the ground that

Neagle's claim was barred by a two-year statute of limitations. TEX.REV.CIV. STAT.ANN. art. 4590i, § 10.01. The trial court granted their summary judgments and the court of appeals, with one justice dissenting, affirmed. 658 S.W.2d 258. We reverse the judgment of the court of appeals and remand this cause to the trial court.

Neagle's appendectomy was performed on December 9, 1977, at the Kleberg County Hospital, Kingsville, Texas. He was discharged from the hospital one week later. Dr. Nelson last examined Neagle within a few weeks of his discharge; however, the other respondents did not see Neagle after his discharge from the hospital. Discovery of the sponge occurred in January, 1980, more than two years after the appendectomy, when, after feeling a mass in his abdomen, Neagle submitted to exploratory surgery.

Neagle alleged that the surgical sponge had been left in his abdomen during the operation and that it was impossible for him to discover the sponge until more than two years after the surgery. We presume for purposes of appellate review that Neagle's allegations are true. *See, Bayouth v. Lion Oil Co.*, 671 S.W.2d 867 (Tex.1984).

The action of the trial court in granting Nelson's motion for summary judgment was based upon the two-year statute of limitations set forth in Art. 4590i, § 10.01. This statute provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

This statute purports to establish an absolute two-year statute of limitations for Neagle's claim. In *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984), we held that TEX. INS.CODE ANN. art. 5.82, § 4 (repealed), predecessor to Art. 4590i, § 10.01, was unconstitutional insofar as it cut off a cause of action before the Nelsons could have known that their son had Duchenne Muscular Dystrophy. We have likewise declared unconstitutional that part of Art. 4.82, § 4 relating to minors. *Sax v. Votteler*, 648 S.W.2d 661 (Tex.1983). Both cases were decided on the basis of the open courts provision of the Texas Constitution. TEX. CONST. Art. I, § 13.

It is Neagle's contention that Art. 4590i, § 10.01, as applied to his cause of action, also violates the open courts provision. We agree. The open courts provision of our Constitution protects a citizen, such as Neagle, from legislative acts that abridge his right to sue before he has a reasonable opportunity to discover the wrong and bring suit.

We reverse the judgment of the court of appeals and remand this cause to the trial court.

GONZALEZ, J., not sitting.

ROBERTSON, Justice, concurring.

I agree fully with the majority opinion of the court in this cause. I must, however, respectfully disagree with the conclusions stated in Justice Kilgarlin's concurrence.

A concurring opinion can perform a useful function in explaining or supplementing opinions, providing guidance for both bench and bar. I have used this vehicle before, when the majority opinion deserved further explanation or could be justified on different legal grounds. *See, e.g., Nelson v. Krusen*, 678 S.W.2d 918, 925 (Tex.1984) (Robertson, J., concurring); *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex.1984) (Robertson, J., concurring).

It is certainly possible that the views so ably expressed in Justice Kilgarlin's concurrence may, in some future case, become the majority opinion of this court. The

questions addressed, however, are extremely complex. I fear that without additional explanation courts and litigants might mistakenly conclude that this court has already arrived at a firm consensus on these issues. The purpose of this concurrence is solely to demonstrate that there is at least one other plausible viewpoint. If and when the issues are raised directly in an appropriate case, further briefing and creative advocacy may reveal even more—and better—alternatives.

One question remaining for this court's future consideration is whether the legislature has abolished the "discovery rule" of *Gaddis v. Smith*, 417 S.W.2d 577 (Tex. 1967). It is suggested that "the clear intent of the legislature" in passing art. 5.82 Tex.Ins.Code Ann. and Tex.Rev.Civ.Stat. Ann. art. 4590i was "to overrule *Gaddis v. Smith*." 685 S.W.2d at 14 (Kilgarlin, J., concurring).

As I have pointed out once before, *Nelson v. Krusen*, 678 S.W.2d 918, 928 (Tex. 1984) (Robertson, J. concurring), legislative history is not the beginning point for analysis of a statute. "It is the duty of courts to construe a law as written, and, if possible, ascertain its intention from the language used therein...." *Government Personnel Mut. Ins. Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525, 529 (1952). I am not convinced that the plain language of art. 4590i manifests any intent to abrogate the "discovery rule." Without an initial showing of some ambiguity or conflict in statutory language, it is not appropriate to inquire into the possible motives the legislature might have had in drafting the act. *Board of Ins. Comm'rs v. Guardian Life Ins. Co.*, 142 Tex. 630, 180 S.W.2d 906, 909 (1944). For this reason, I view the "discovery rule" issue as an open question, and remain amenable to persuasion.

I am even more troubled by the suggested use of an "analogy" to workers' compensation law to answer the question of what a permissible delay for a malpractice plaintiff might be. As a method of reasoning, analogy draws its strength from similarity. It is difficult to perceive any relevant similarity between development of the test in *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370, 372 (1948) and the task that would confront the Texas Supreme Court in medical malpractice.

On the other hand, there are numerous distinctions. For example, in *Hawkins* the court sought diligently to follow the letter of a limitation statute; this court has constitutionally invalidated the "analogous" malpractice statute. Further, the statute in *Hawkins* provided only thirty days for giving notice of injury, as opposed to two years under the "analogous" statute considered here, a factor that must surely have flavored decisions on "good cause" for delay in workers' compensation cases. *Compare* Tex.Rev.Civ.Stat.Ann. art. 8307 § 4a *with* Tex.Rev.Civ.Stat.Ann. art. 4590i §§ 4.01, 10.01. Perhaps most important, while the *Hawkins* court operated within the context of the workers' compensation system, a statutory alternative to the common law of torts, the court today, having invalidated the statute as it applies to a particular plaintiff, operates within the familiar arena of common law and equity.

The last observation suggests one easy alternative to a strained analogy to workers' compensation law. While the malpractice limitations period may be unconstitutional as applied to a particular case, principles of common law and equity remain. This court has previously recognized that even where a statutory limitation period is not applicable, the equitable doctrine of laches may nonetheless operate to prevent the assertion of a stale claim. *See, e.g., City of Fort Worth v. Johnson*, 388 S.W.2d 400 (Tex.1964).

A further alternative to the workers' compensation analogy would exist if this court were to find the language of the statute consistent with the continued existence of the "discovery rule." Quite simply, the statutory two-year period would run from the date of discovery, since the statute would not be unconstitutional as applied.

Other and better legal and equitable theories may well exist. The purpose of this

concurrence was not to catalogue and weigh the merits of all possible answers, but rather to demonstrate that the questions, in my opinion, remain open.

KILGARLIN, Justice, concurring.

Because there are questions that the court opinion leaves unanswered, I find it necessary to write a concurring opinion. Hopefully, it will aid our state's bench and bar in resolving questions in what is now an imprecise area of the law.

We have held today that article 4590i, Tex.Rev.Civ.Stat.Ann., as applied in this case violates our Constitution's open courts provision. Tex. Const. art. I, § 13. Our holding is based upon the assumption that Neagle reasonably should not have known of his injury during the period of limitations. If, upon retrial, however, this fact is controverted, it should be Neagle's burden to establish this fact because he is the party challenging the constitutionality of this statute. *Robinson v. Hill*, 507 S.W.2d 521 (Tex.1974); *Smith v. Craddick*, 471 S.W.2d 375 (Tex.1971).

There is also a question of the length of time Neagle has in which to file suit after discovery of his injury. We did not discuss this in *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984). Nor is this question discussed in the court's opinion. In *Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967), this court adopted the standard for medical malpractice cases involving a physician leaving a *foreign object* in a patient's body. We held that the statute of limitations did not begin to run until such time as the patient discovered, or reasonably should have discovered, the foreign object. But, is *Gaddis v. Smith* still viable? To answer that question, one must examine the language of the statute. A cursory reading of article 4590i, § 10.01, is subject to but one interpretation, and that is all malpractice actions shall be brought within two years of the tort or date of last treatment. But, if that language is unhelpful, we must look to the legislative intent behind the enactment of article 4590i. The Medical Professional Liability Study Commission, created by the 64th Legislature, found that one of the purposes of art. 5.82, Tex.Ins.Code Ann. (the predecessor legislation enacted as an interim measure pending the commission report) was to abolish all limitations exceptions "previously carved out by the courts." Report at 11–12.

I must conclude, therefore, that the clear intent of the legislature was to overrule the *Gaddis v. Smith* holding that limitations did not begin to run until after discovery of the foreign object. To the extent that the legislative enactment is constitutional and remains unchallenged, this court must accommodate the legislative intent. Therefore, it is quite obvious that we cannot now reinstate a limitations period that would allow for suits to be filed within two years after the date of discovery.

But, if we do not allow two years after discovery in which to file suit, what is a permissible delay? The most apt analogy to discovery after limitations has run can be found in worker's compensation law, where if a claimant has good cause for a late filing of his claim, he is not barred from asserting that claim. Because "good cause" was not defined by statute, this court established a test for determining its existence. That test is whether the claimant prosecuted his claim with that degree of diligence that an ordinary prudent person would have exercised under the same or similar circumstances. The determination of diligence was held to be ordinarily a question of fact, only to be determined against a claimant as a matter of law, when the evidence, construed most favorably for the claimant, admitted no other conclusion. *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 384, 207 S.W.2d 370, 372 (1948). We also said in *Hawkins* that "a reasonable time should be allowed for the investigation, preparation and filing of a claim after the seriousness of the injuries is suspected or determined. No set rule could be established for measuring diligence in this respect. Each case must rest upon its own facts." 207 S.W.2d at 373.

In my opinion, the standard used in worker's compensation cases is a proper

standard to adopt in medical malpractices cases where discovery could not occur within two years of the tort or last treatment. Therefore, where a question exists as to the reasonableness of delay before filing suit after discovery of the defect or injury, the following issue should be submitted to the jury: "Do you find from a preponderance of the evidence that after discovering the injury (defect), plaintiff prosecuted his claim and suit with that degree of diligence that an ordinary prudent person would have exercised under the same or similar circumstances?"

I agree with the majority that article 4590i as applied in this case violates the open court's provision. If a person could not have reasonably discovered his injury within the limitations period, then his action cannot be barred. The court has chosen not to discuss the length of time Neagle has in which to file suit after discovering the injury. I have attempted to provide an answer to that question. I join in reversing and remanding this case for further proceedings on the merits.